UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | |
|---|---|
| TIMOTHY CHARLES HOLMSETH, | ) |
| | ) |
| Plaintiff, | ) 2:23-CV-11 |
| | ) |
| vs. | ) |
| | ) |
| ALEXANDRIA HANNELORE | ) |
| GODDARD, et al., | ) |
| | ) |
| Defendants. | ) |

**REPORT AND RECOMMENDATION**

Before the Court is Plaintiffs' Motion for a Temporary Restraining Order. [Doc. 16]. This matter was referred by the District Court for a Report and Recommendation [Doc. 17] pursuant to 28 U.S.C. § 636.

**I.    FACTUAL BACKGROUND**

Plaintiff Timothy Charles Holmseth filed a Complaint against Defendants Alexandria Hannelore Goddard, Bonnie Conaway[1], Cythia Fregiato, Mark DeWine [sic], the State of Ohio, and Frank Fregiato on February 6, 2023. [Doc. 1]. Plaintiff then filed an Amended Complaint against all Defendants on March 1, 2023. [Doc. 6]. Therein, Plaintiff alleges that he is a journalist and Defendants have conspired to silence him and violate his civil rights. [Doc. 6, p. 1-2]. Plaintiff states that on August 19, 2022, he learned that he had been charged with "Complicity to Menacing by Stalking" in Ohio when he saw a report about himself on YouTube

---

[1] While Plaintiff names Defendant Conaway in his Amended Complaint, he does not request any injunctive relief that would apply to her; therefore, his claims against her are not addressed in this Report and Recommendation.

1

and a government website. *Id.* at p. 3. On January 30, 2023, he learned that a civil stalking protection order had been entered against him in Belmont County, Ohio. *Id.* at p. 1.

Plaintiff alleges that Defendant Goddard (who is described by Plaintiff as "a high profile media personality and agent" and as an "un-licensed and un-regulated Agent of an attorney from Florida named Kim Lowry Picazio"),[2] filed for the protection order to extort Plaintiff in retaliation against Plaintiff for filing a federal court lawsuit against her previously in the Middle District of Tennessee[3] and reporting on her actions and those of Defendants DeWine and the State of Ohio in his role as a journalist. *Id.* at p. 1-2, 12, 18. Plaintiff likewise claims that the order granting Defendant Goddard's request was issued in retaliation for Plaintiff's actions. *Id.* Additionally, Plaintiff contends that all Defendants violated his constitutional rights by failing to properly serve him with notice of the civil stalking protection order. *Id.* at p. 12-14. Plaintiff further alleges that Defendant Goddard has defamed him through various social media posts in which she shared information about Plaintiff's criminal case in Belmont County, Ohio. *Id.* at 21. Plaintiff asserts that the criminal charges against him were based on fraud. *Id.*

Finally, Plaintiff alleges the Federal Bureau of Investigation (FBI) has violated his First and Second Amendment rights and his right to due process by placing his name and identifying information in the National Crime Information Center (NCIC). *Id.* at p. 13. Plaintiff requests $20,000,000.00 in monetary relief and an injunction requiring Belmont County, Ohio, and the State of Ohio to remove all references to him from government websites and requiring the FBI to remove his name from NCIC. *Id.* at p. 25. In his amended complaint, Plaintiff asks the Court

---

[2] Plaintiff consistently refers to Defendant Goddard as a "rapist" and describes an event in which Defendant Goddard texted a sexual photo to someone named Randi Erickson, but Plaintiff does not appear to assert any legal claims related to those allegations.
[3] *See Holmseth v. Page, et al,* 3:22-cv-00912 (M.D. Tenn. 2022), in which Defendant Goddard was a party defendant. That action was dismissed.

to issue a temporary injunction until the matter is resolved if it is not inclined to issue a permanent injunction at this point in the litigation. *Id.*

On May 10, 2023, Plaintiff filed a Motion for Temporary Restraining Order. [Doc. 16]. Plaintiff does not request specific relief in the motion[4], but he appears to be asking the Court to void certain state court orders and/or to enjoin Defendant Goddard from making public statements about Plaintiff.[5] Though he requests specific injunctive relief in the Amended Complaint, Plaintiff does not reiterate that request in his motion. Plaintiff asserts that a temporary restraining order ("TRO") is appropriate under Fed. R. Civ. P. 65, because without the issuance of a TRO he would suffer "immediate and irreparable injury, loss, or damage." *Id.* at p. 4. Additionally, he claims that he has attempted to notify Defendant Goddard of his motion, but she has moved out of the State of Ohio to evade service. *Id.* The Court notes that Plaintiff's motion, which is 71 pages in length including attachments, reads more like a new complaint rather than a motion based upon the information contained in Plaintiff's original complaint. Because Plaintiff is proceeding pro se, the Court will provide some leeway to Plaintiff in considering the new information contained in the motion.

Plaintiff first contends that Defendant Goddard is using fraudulently obtained restraining orders in a multi-state conspiracy to block information from being published by Plaintiff but provides no specifics as to how the restraining order is preventing him from publishing information. *Id.* at p. 1. The first of those is referenced above as the one obtained by Defendant

---

[4] A movant requesting a TRO must request what specific conduct the Court is being requested to enjoin. *Berg v. Knox Cnty., Tennessee*, No. 3:20-CV-00019-DCLC, 2020 WL 7078374 (E.D. Tenn. Sept. 28, 2020). Though Plaintiff has not requested specific relief, the Court will construe his motion liberally because he is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).
[5] Plaintiff also alleges that the Defendants in this case "set the stage for Plaintiff's kidnapping under color of law." [Doc. 6, p. 1]. The Court assumes Plaintiff is referring to his arrest, but he does not provide any factual development for a claim that he was unlawfully arrested.

3

Goddard in Ohio. *Id.* at p. 2. Two other orders were apparently obtained in Florida and Minnesota by Kim Lowry Picazo, who Plaintiff asserts is Defendant Goddard's attorney[6]. *Id.* at p. 9-10. Plaintiff alleges that the orders prevent him from publicly discussing Defendant Goddard and two murder cases. *Id.* at p. 1-2, 4, 10. Plaintiff has previously reported on the murder case of *State of Florida v. Neeley Petrie Blanchard* and the potential murder of Christopher Hallett, who Plaintiff alleges was his "power of attorney." *Id.* at p. 4, 10. Plaintiff asserts that because he is a journalist and war correspondent, these orders violate his First Amendment right to free speech and the press as well as a Department of Defense manual which discusses protections for journalists against unlawful combatants. *Id.* at p. 2-3. Plaintiff asserts that Defendant Goddard is an unlawful combatant under the "Law of War" and is not an American citizen. *Id.* at p. 3. He further alleges that Defendant Goddard is conspiring with William Kevin Murtaugh of Apopka, Florida, who Plaintiff contends threatened him on Twitter by posting a photograph of James "Whitey" Bulger which Plaintiff claims included "a threat directed against Plaintiff that implied Plaintiff should beware, because he (Murtaugh) is in fact James 'Whitey" Bulger." *Id.* at p. 1. Mr. Murtaugh is not a defendant to this action.

Plaintiff then goes on to further attack the restraining orders against him as procedurally deficient. He alleges that the Ohio restraining order is invalid because he was never properly served with the order. *Id.* at p. 2. More specifically, Plaintiff contends the orders were never mailed and that USPS and FedEx tracking numbers were fabricated to create the appearance of service[7]. *Id.* He alleges that he does not live in Ohio, was not present in the state during the dates

---

[6] Plaintiff has attached copies of a Motion to Dismiss, Brief in Support, Judicial Estoppel, and a Motion for Default Judgment in *State of Minnesota v. Holmseth*, No. 60-CR-18 (Minn. Dist. Ct. 2019). [Doc. 6, p. 22-72]. The attachments consist of Plaintiff's filings and do not include any court rulings.

[7] Plaintiff asserts that failure to notify him of the restraining orders violates his right to Due Process; however, he admits that he became aware of the restraining orders, and he provides no competent proof that the USPS or FedEx tracking numbers were fabricated. In his Amended Complaint, Plaintiff includes a photo showing

4

relevant to the restraining order and has never communicated with Defendant Goddard. *Id.* at p. 2. Additionally, Plaintiff asserts that the Florida restraining order is invalid because a Broward County, Florida State Attorney "rejected" the order. *Id.* at p. 12. Plaintiff includes a memo from State Attorney Marie Wolf in which she explains that a case seeking a restraining order against Plaintiff was transferred from the Domestic Violence Unit to the Misdemeanor Trial Unit of the Office of the State Attorney. *Id.* Later, Plaintiff asserts that Defendant Goddard and Ms. Picazio traveled to Minnesota seeking another restraining order based on the "rejected" Florida case. *Id.*

Plaintiff next takes issue with certain tweets he alleges Defendant Goddard published about him on Twitter. Plaintiff attaches multiple screenshots of tweets by an account with the name "alex – spreadsheets for days" and a handle which appears to read "prinniedidit." Plaintiff does not provide sufficient proof to demonstrate that this Twitter account belongs to Defendant Goddard nor do any of the tweets attached refer to Plaintiff by name. The tweets include references to a restraining order and statements such as "[y]ou're an idiot who will be held accountable for your actions." *Id.* at 15, 19. Plaintiff also includes photos of a woman wearing a t-shirt with the letters "FBI" on the front and an accompanying tweet that says, "I'm on assignment." *Id.* at 18. It is not entirely clear why Plaintiff includes those tweets, but he appears to be alleging that Defendant Goddard is involved in a conspiracy with the FBI. *See id.* at p. 17.

Plaintiff also appears to assert that Ms. Picazio and Defendant Goddard have attempted to commit violence against him. Plaintiff states that they traveled from Minnesota to North Dakota searching for him because he did not appear that day for a hearing. *Id.* at 13. He has filed

---

that a label and tracking number were created for a notice of hearing but that the mail was "not yet in system." [Doc. 6, p. 14-15]. However, he later includes evidence that his case was associated with a different tracking number, and that piece of mail had not yet shipped. *Id.* at 17, 19. Plaintiff's assertion that the tracking numbers were fabricated appears to be based on an unsubstantiated conspiracy theory. The Sixth Circuit has explained that a pleading is factually deficient "when it relies on 'fantastic or delusional' allegations." *Brand v. Motley*, 526 F.3d 921, 923 (6th Cir. 2008).

5

an exhibit marked "Exhibit H" which he contends contains a video of Ms. Picazio talking to Plaintiff's "power of attorney" Kirk Pendergrass. *Id.* Plaintiff submits that Ms. Picazio asked Mr. Pendergrass about Plaintiff's whereabouts and asked, "Where's Tim?" and "What would you like me to do? Kill him?" *Id.* The Court has reviewed Exhibit H and finds that Plaintiff's description does not accurately reflect the content of the video. The video is a recording of a YouTube video which has audio but no visual image until the last few seconds. Up to that point, the video is entirely dark. In the audio, an unidentified man and woman can be heard arguing about a restraining order which was issued in a civil court. She states that a restraining order was the "only remedy [she] had". She appears to have said something about a restraining order being necessary to protect children earlier in the video, but the audio is muffled. The man then cuts her off to say, "that is not the only remedy." She then responds with, "what would you like me to do? Kill him?" After a few more moments of muffled conversation, she says, "I do not want him dead. I want him to leave me alone."

Defendants Judge Frank Fregiato and Clerk of Courts Cynthia Fregiato (referring to themselves collectively as the "Belmont County Defendants") filed a Response in Opposition to Plaintiff's Motion for Temporary Restraining Order. [Doc. 23]. They first argue that Plaintiff has not requested any specific relief directed toward the Belmont County Defendants, but they acknowledge that he does appear to accuse them of conspiring with Defendant Goddard. Next, they aver that they are immune from any form of injunctive relief under theories of judicial and quasi-judicial immunity. Additionally, the Belmont County Defendants contend that Plaintiff has not demonstrated how he will suffer irreparable harm without injunctive relief. Instead, they claim that there is a likelihood of substantial harm to others if the Court were to issue a TRO against a state-ordered civil stalking protection order. Finally, the Belmont County Defendants

assert that the Court is barred from issuing a TRO against state court proceedings by the Anti-Injunction Act. Having considered the facts and arguments made by the parties, the Court will now analyze Plaintiff's request for a TRO under applicable law.

## II. LEGAL ANALYSIS

In the motion at issue, Plaintiff asks this Court to issue a TRO. In doing so, he appears to be asking the Court to void certain state court orders and/or to enjoin Defendant Goddard from making public statements about Plaintiff.

### a. Authority to issue a TRO

As an initial matter, it appears that this Court does not have authority to issue an injunction against the state court restraining orders at issue here. First, the Anti-Injunction Act bars federal courts from enjoining state court proceedings, except where "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments". 28 U.S.C. § 2283. Plaintiff indicates that he is asking this Court to enjoin the enforcement of various restraining orders entered by multiple state court judges; however, it is unclear whether those orders are final or interim orders in pending criminal cases. To the extent that Plaintiff is asking the Court to enjoin pending state proceedings, the Court would not have the power to do so, because none of the exceptions to the Anti-Injunction Act apply here. Plaintiff does not point to any Act of Congress expressly authorizing injunctions against state court proceedings addressing the issuance of restraining or other protective orders; an injunction would not aid in this Court's jurisdiction[8]; and there has been no prior federal decision on the matters Plaintiff

---

[8] "Courts have applied this second exception in only two scenarios: where the case is removed from the state court, and where the federal court acquires in rem or quasi in rem jurisdiction over a case involving real property before the state court does." *Martingale LLC v. City of Louisville*, 361 F.3d 297, 302 (6th Cir. 2004) (internal citations omitted). Neither of those scenarios apply here.

presents, and as such, an injunction would not be necessary "to protect or effectuate [the Court's] judgments".

Second, under the *Rooker-Feldman* doctrine, federal district courts do not have jurisdiction to reject state court judgments or decrees. *See Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 44 S. Ct. 149, 68 L. Ed. 362 (1923); *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 103 S. Ct. 1303, 75 L. Ed. 2d 206 (1983). "Only the Supreme Court, not an inferior federal court, has jurisdiction to resolve appeals from '[f]inal judgments or decrees rendered by the highest court[s] of a State.'" *Hohenberg v. Shelby Cnty., Tennessee*, 68 F.4th 336 (6th Cir. 2023) (quoting 28 U.S.C. § 1257(a)). Federal district courts may not resolve challenges to judgments when the challenger is asking that the judgment be overturned. *Hohenberg*, 68 F.4th 336 (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284, 287, n.2, 293 (2005)). "[A]sking a federal court to declare a state-court order unconstitutional and prevent its enforcement" is akin to appealing the state-court order to federal district court and is impermissible. *RLR Invs., LLC v. City of Pigeon Forge, Tennessee*, 4 F. 4th 380, 388 (6th Cir. 2021), *cert. denied sub nom. RLR Invs., LLC v. City of Pigeon Forge*, 211 L. Ed. 2d 569, 142 S. Ct. 862 (2022). At the same time, the Supreme Court and Sixth Circuit have warned against liberal use of *Rooker-Feldman* to dismiss cases on jurisdictional grounds. *Exxon*, 544 U.S. at 283; *Hohenberg*, 68 F.4th 336. Still, as a policy matter, the Sixth Circuit has long held that district courts may not grant injunctive relief when "doing so would involve unduly intrusive interference with, and monitoring of, the day-to-day conduct of state hearings and trials." *Tindall v. Wayne Cnty. Friend of Ct., by Joseph A. Schewe*, 269 F.3d 533, 539 (6th Cir. 2001) (citing *Sevier v. Turner*, 742 F.2d 262, 269-70 (6th Cir. 1984)).

### b. Legal standard governing TRO's

Even if the Court could grant Plaintiff's motion and issue an injunction, the Sixth Circuit cautions that issuance of an "injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002). This remedy is "never awarded as a matter of right." *Thompson v. Hayes*, 748 F. Supp. 2d 824, 830 (E.D. Tenn. 2010) (quoting *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7 (2008)). Under this difficult standard, the party seeking injunctive relief "bears the burden of justifying such relief, including showing irreparable harm and likelihood of success." *McNeilly v. Land*, 684 F.3d 611, 615 (6th Cir. 2012) (discussing the standard for a preliminary injunction); *see also ABX Air, Inc. v. Int'l Bhd. of Teamsters, Airline Div.*, 219 F. Supp. 3d 665, 670 (S.D. Ohio 2016) (discussing the standard for a TRO). Where injunctive relief is appropriate, it "should be no more burdensome . . . than necessary to provide complete relief . . . because a court's role is to provide relief only to claimants . . . who have suffered, or will imminently suffer, actual harm." *Trump,* 137 S. Ct. at 2090 (2017) (Thomas, J., concurring in part and dissenting in part) (quoting *Califano v. Yamasaki,* 442 U.S. 682, 702 (1979); and quoting *Lewis v. Casey*, 518 U.S. 343, 349 (1996)) (internal quotations omitted).

Federal Rule of Civil Procedure 65 permits the Court to issue a TRO before a trial on the merits. When requesting a TRO without notice to the adverse party, the movant must submit "specific facts in an affidavit or a verified complaint clearly show[ing] that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition" and certify "in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). Additionally, the movant must specify what conduct he

9

Case 2:23-cv-00011-DCLC-CRW Document 26 Filed 06/29/23 Page 9 of 16 PageID #: 373

or she seeks to enjoin. *Berg v. Knox Cnty., Tennessee*, No. 3:20-CV-00019-DCLC, 2020 WL 7078374 (E.D. Tenn. Sept. 28, 2020) (denying a TRO when "the Complaint leaves the Court having to guess at the specific conduct they seek to restrain").

Before a Court issues injunctive relief, it must balance the following four factors: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Emps. Ass'n v. Schimmel*, 751 F.3d 427, 430 (6th Cir. 2014) (internal citations omitted). "The standard for issuing a temporary restraining order is logically the same as for a preliminary injunction with emphasis, however, on irreparable harm given that the purpose of a temporary restraining order is to maintain the status quo." *Reid v. Hood*, No. 1:10 CV 2842, 2011 WL 251437, at *2, 2011 U.S. Dist. LEXIS 7631, at *2 (N.D. Ohio Jan. 26, 2011) (citing *Motor Vehicle Bd. of Calif. v. Fox*, 434 U.S. 1345, 1347 n.2, 98 S.Ct. 359, 54 L.Ed.2d 439 (1977)). These factors are to be balanced against each other and "should not be considered prerequisites to the grant of a preliminary injunction." *Leary v. Daeschner*, 228 F.3d 729, 736 (6th Cir. 2000). "A district court is required to make specific findings concerning each of the four factors, unless fewer are dispositive of the issue." *Performance Unlimited, Inc. v. Questar Publishers, Inc.*, 52 F.3d 1373, 1381 (6th Cir. 1995) (quoting *Int'l Longshoremen's Ass'n, AFL–CIO, Local Union No.1937 v. Norfolk S. Corp.,* 927 F. 2d 900, 903 (6th Cir. 1991), *cert. denied,* 502 U.S. 813, 112 S.Ct. 63, 116 L.Ed.2d 38 (1991)) (internal citations omitted). "[A] finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzales v. Nat'l Bd. of Med. Examiners*, 225 F.3d 620, 625 (6th Cir. 2000).

### c. Application to Plaintiff's Motion

As explained above, Plaintiff has not met certain initial requirements in requesting a TRO. Specifically, he has not sufficiently identified the relief that he seeks; however, the Court will liberally construe Plaintiff's request because he is proceeding pro se. *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007).

The Court will first address whether Plaintiff is likely to succeed on the merits. "To establish a likelihood of success on the merits, 'a plaintiff must show more than a mere possibility of success.'" *Doe v. The Ohio State Univ.*, 136 F. Supp. 3d 854, 862 (S.D. Ohio 2016) (quoting *Six Clinics Holding Corp., II v. Cafcomp Sys., Inc.*, 119 F.3d 393, 402 (6th Cir. 1997)). Rather, as the *Doe* Court explained, a party must demonstrate a substantial likelihood of success. *Id.*

Plaintiff cannot succeed on his claims against Defendants Frank Fregiato and Cythia Fregiato because they are entitled to judicial immunity. "Judges and other court officials [including clerks] enjoy absolute immunity from suit on claims arising out of the performance of judicial or quasi-judicial functions." *Harris v. Suter*, 3 F. App'x 365 (6th Cir. 2001) (citing *Foster v. Walsh*, 864 F.2d 416, 417 (6th Cir. 1988)).

Additionally, Plaintiff cannot succeed on his claims for monetary relief against Defendants DeWine and the State of Ohio, because they are entitled to sovereign immunity. The Eleventh Amendment to the U.S. Constitution prohibits suit against states for monetary relief, and courts have extended the prohibition to state officials acting in their official capacity except under certain circumstances. *Smith v. DeWine*, 476 F. Supp. 3d 635, 650 (S.D. Ohio 2020) (holding that Governor DeWine was immune from suit under the Eleventh Amendment and quoting *Yancey v. Los Angeles Superior Court*, No. 5:03-cv-122, 2004 U.S. Dist. LEXIS 330, at *10 (W.D. Mich.

Jan. 2, 2004) ("An entity acting as an arm of the state enjoys Eleventh Amendment immunity from federal suit to the same extent as the state itself.")).

Further, Plaintiff is unlikely to succeed on his claim for injunctive relief against Defendant State of Ohio. While in his Amended Complaint, Plaintiff requests that the State be required to remove all references to him from its websites, Plaintiff does not allege how the state violated his rights by posting his information on the internet or the specific irreparable harm he will suffer if they are not immediately required to remove his information.

Lastly, Plaintiff is not likely to succeed on his claims against Defendant Goddard. In attempting to make out claims against Defendant Goddard in his Amended Complaint, Plaintiff includes rambling allegations alleging that she is involved in a conspiracy with the State of Ohio and others to silence and defame him. His allegation that Defendant Goddard extorted him by filing for a restraining order is unlikely to succeed because he has not alleged facts which would show a claim for extortion. *Overnite Transp. Co. v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 168 F. Supp. 2d 826, 841 (W.D. Tenn. 2001) ("extortion is typically classified as a crime against property"). Additionally, his defamation claim against Defendant Goddard is similarly unlikely to succeed because he has not provided any particular false statements that he claims she has made against him. *Hudik v. Fox News Network, LLC*, 512 F. Supp. 3d 816, 824 (M.D. Tenn. 2021) (explaining that the elements of a prima facie case of defamation, including that the defamatory statement was false). While Plaintiff includes screenshots of tweets that Defendant Goddard allegedly posted on her Twitter account in which she shares statements Plaintiff has made and court documents relating to a criminal case in which he is a defendant, Plaintiff has not alleged that Defendant Goddard made a false statement but rather claims that the documents and criminal case are based on fraud.

In his motion, Plaintiff adds additional allegations against Defendant Goddard. While using a motion for a TRO to add claims against a party is an improper use of such a motion, the Court will address Plaintiff's claims because he is proceeding pro se. Plaintiff first claims that Defendant Goddard has violated his right to free speech under the First Amendment to the U.S. Constitution. Plaintiff's claim against Defendant Goddard for violating his right to free speech must fail because the First Amendment only prohibits government actors from abridging the freedom of speech, and Plaintiff has not alleged that Defendant Goddard is a government actor, instead describing her as a media personality and agent. *Manhattan Cmty. Access Corp. v. Halleck*, 204 L. Ed. 2d 405, 139 S. Ct. 1921, 1928 (2019). Plaintiff next claims that Plaintiff Goddard has violated his First Amendment right to freedom of the press, because he is a "war correspondent." This claim must fail not only because Defendant Goddard is not alleged to be a government actor, but also because the legal authority cited by Plaintiff is inapplicable. Plaintiff cites to Section 4.24 of the Department of Defense Law of War Manual and certain Executive Orders relating to the Armed Forces. These authorities are applicable only members of the Armed Forces, and not journalists which is the title Plaintiff claims to hold. Further, the Department of Defense Law of War Manual explicitly states, "[t]his manual is not intended to, and does not, create any right or benefit, substantive or procedural, enforceable at law or in equity against the United States, its departments, agencies, or other entities, its officers or employees, or any other person."[9]

The next claim against Defendant Goddard to be addressed relates to tweets Plaintiff claims she published about him on Twitter. While Plaintiff attaches multiple screenshots of tweets from an account with the name "alex – spreadsheets for days" and a handle which appears to read

---

[9] DEPARTMENT OF DEFENSE, LAW OF WAR MANUAL (2015),
https://dod.defense.gov/Portals/1/Documents/pubs/DoD%20Law%20of%20War%20Manual%20-%20June%202015%20Updated%20Dec%202016.pdf?ver=2016-12-13-172036-190

"prinniedidit," this information is insufficient to connect Defendant Goddard to the account. Moreover, none of the tweets at issue refer to Plaintiff by name. At this juncture, Plaintiff's allegations about these tweets amount to little more than mere speculation.

The remaining claim against Defendant Goddard contained in the motion for injunctive relief involves the allegation that she worked with Ms. Picazio to commit violence against Plaintiff which is addressed above. As noted above, the contents of Exhibit H which Plaintiff relies on to support his allegation simply does not provide such support. While it is far from clear in the YouTube video contained in Exhibit H who is speaking, it is clear to the Court that no threats were being made toward Plaintiff. Instead, whether it is Defendant Goddard, Ms. Picazio, or someone else who is speaking, that person is merely noting that she felt she had no choice but to obtain a restraining order against Plaintiff due to his conduct. In fact, the speaker specifically makes it clear that she does not want Plaintiff dead but merely wants him to leave her alone.

As set forth above, the Court does not have jurisdiction over most claims asserted by Plaintiff. Even as to those claims advanced by Plaintiff where the Court might have jurisdiction, Plaintiff has little likelihood of success under the facts alleged in his Amended Complaint and the instant motion. As such, the Court need not analyze the other factors to be considered when injunctive relief is requested and recommends that Plaintiff's motion for a TRO be denied.

### III.  PLAINTIFF'S PREVIOUS FILINGS

In reviewing Plaintiff's filings, the Court has found that in addition to the present case Plaintiff has filed five other federal lawsuits which have been dismissed. The following are the docket numbers and dispositions of those cases:

- **Southern District of Florida Case No. 0:19-cv-60002** – dismissed for failure of attorney to comply with court orders. [Doc. 35].

- **District of Minnesota Case No. 0:14-CV-02970** – dismissed for failure to state a claim. The District Judge adopted the Magistrate Judge's Report and Recommendation, which recommended dismissal for failure to allege specific facts supporting Plaintiff's conclusory allegations. [Docs. 107, 133].

- **District of Minnesota Case No. 0:16-CV-2496** – dismissed for failure to file complaint and lack of subject matter jurisdiction. The District Judge adopted the Magistrate Judge's Report and Recommendation, which noted that "Holmseth does not seek relief pursuant to a federal statute or cause of action in fact, Holmseth does not at any point allege the legal basis upon which he is bringing this lawsuit and thus this action does not arise 'under the Constitution, laws, or treaties of the United States.'" [Docs. 3, 4].

- **District of North Dakota Case No. 3:16-CV-303** – dismissed with a finding that an appeal from the dismissal of the case would be frivolous, and not taken in good faith. Plaintiff's complaint alleged that various defendants engaged in a criminal conspiracy against him. [Doc. 6].

- **Middle District of Tennessee Case No. 3:22-cv-912** – dismissed for failure to state a claim with the Court stating that it "has now indulged Plaintiff with three opportunities to submit a pleading that passes muster under the Federal Rules, expressly advising that failure to comply would result in dismissal. (Doc. Nos. 4, 10.) Plaintiff, however, has not evinced a serious intent to comply with the Court's Orders or submit a pleading that demonstrates a plausible, non-speculative right to relief." [Doc. 16].

Given that none of Plaintiff's previous lawsuits have been found to have merit and that his present claims appear to be lacking in merit as well, this Court is compelled to recommend that the District Court consider referring Plaintiff to the Chief District Judge for evaluation of whether he should be designated a vexatious litigant. *See* E.D. Tenn. Standing Order 18-04 (allowing district judges to refer litigants with a history of filing repetitive, vexatious, or frivolous litigation to the chief judge to determine whether an injunction limiting filings by such litigants is appropriate).

## CONCLUSION

For the reasons stated above, the undersigned **RECOMMENDS** that Plaintiff's Motion for a Temporary Restraining Order [Doc. 16] be **DENIED**. Additionally, the undersigned recommends that the District Court consider referring Plaintiff to the Chief District Judge so that he may be evaluated as a potentially vexatious litigant.

Respectfully submitted,[10]

/s/Cynthia Richardson Wyrick
United States Magistrate Judge

---

[10] Objections to this Report and Recommendation must be filed within 14 days after service of this recommended disposition on the objecting party. 28 U.S.C. 636(b)(1); Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Fed. R. Civ. P. 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).