UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| TIMOTHY CHARLES HOLMSETH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:23-CV-00011-DCLC-CRW |
| | ) | |
| v. | ) | |
| | ) | |
| ALEXANDRIA HANNELORE GODDARD, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court to consider the Report and Recommendation ("R&R") of the United States Magistrate Judge [Doc. 26]. In the R&R, the magistrate judge recommends that Plaintiff Timothy Charles Holmseth's Motion for a Temporary Restraining Order ("TRO") [Doc. 16] be denied and that Holmseth be referred, pursuant to Standing Order 18-04, to the Chief District Judge for an evaluation of whether Holmseth should be designated a vexatious litigant [Doc. 26, pg. 16]. Holmseth responded to the R&R with new supporting evidence [Docs. 27, 28, 37], objections [Doc. 31], and a Motion to Strike [Doc. 41]. Defendants Belmont County, Ohio, Court of Common Pleas Judge Frank Fregiato and Belmont County Clerk of Court Cynthia Fregiato (the "Fregiatos") filed a Response in Opposition to Holmseth's Objection [Doc. 39]. The matter is now ripe for consideration. For the reasons discussed below, the R&R is **ADOPTED IN PART** and **REJECTED IN PART**. Holmseth's Motion for a TRO [Doc. 16] and Motion to Strike the R&R [Doc. 41] are **DENIED**.

I.     FACTUAL BACKGROUND[1]

Holmseth is a "news reporter, investigative journalist, war correspondent, and publisher" who publishes content on www.timothycharlesholmseth.com and Truth Social [Doc. 6, ¶¶ 2, 4, 15, 28, 41]. Randi Lynn Erickson is the "escrow agent" for Holmseth's website [Doc. 6, ¶ 5]. Both are residents of Minnesota [Doc. 6, ¶ 17; see Doc. 6, pg. 4].

In August 2022, Holmseth learned from YouTube that the State of Ohio filed in the Belmont County Court of Common Pleas ("Belmont Court") a criminal charge against him for Complicity to Menacing by Stalking [Doc. 6, pgs. 3-4, ¶ 44]. Holmseth later learned that: Erickson was the person with whom Holmseth was allegedly complicit; Goddard was the alleged victim; and that summonses had been to Erickson at an incorrect address and to Holmseth at an address at which he neither lived nor received mail for the past three years [Doc. 6, pg. 4].

In November 2022, Holmseth filed a lawsuit against Goddard in the Middle District of Tennessee, No. 3:22-cv-00912, asserting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") [Doc. 6, ¶¶ 4, 6-7].[2] Two months later, Holmseth learned on social media that the Belmont Court had issued a Civil Stalking Protection Order ("CSPO") against him for the protection of Goddard [Doc. 6, ¶ 9]. A review of the docket indicated that Holmseth failed to appear at the CSPO hearing despite proof of service by certified mail [Doc. 6, ¶ 12]. However,

---

[1]     These facts are drawn from the Amended Complaint [Doc. 6].

[2]     Holmseth asserted in those proceedings that Goddard was part of a conspiracy to publish defamatory statements about Holmseth on social media and acted as an agent for attorney Kim Lowry Picazio, who Holmseth accused of using a void Florida protection order to prevent Holmseth from publishing news reports [See CM/ECF for M.D. Tenn., No. 3:22-cv-00912, Doc. 14, ¶¶ 9, 58-63, 65, 70-71, 73, 83-85, 88, 94, 100]. The Middle District of Tennessee dismissed Holmseth's claims without prejudice after his repeated failure to comply with the pleading requirements of Federal Rule of Civil Procedure 8 [CM/ECF for M.D. Tenn., No. 3:22-cv-00912, Doc. 16].

Holmseth did not reside at the address to which the petition was mailed (808 Carmichael Rd., PMB 156, Hudson, Wisconsin) [Doc. 6, ¶ 17].[3] And the U.S. Post Office's online tracking tool indicated that "no process of delivery had . . . been initiated" [Doc. 6, ¶ 23].

After the CSPO issued, the State of Ohio and Belmont Court turned over information about Holmseth to the National Crime Information Center ("NCIC"), which, according to Holmseth, "empowers the federal government to place me on a 'special list' that declares me 'dangerous' [and] can be used to put a halt to my 1st and 2nd Amendment Rights" [Doc. 6, ¶ 16]. Holmseth also saw on Twitter posts by "@prinniedidit"—who Holmseth asserts is Goddard—threatening to have Holmseth arrested by the State of Ohio if anyone in his "fan club" said anything about @prinniedidit she disliked [Doc. 6, ¶ 24]. And Goddard made Twitter posts demanding that Holmseth take down articles about the Belmont Court or Middle District of Tennessee proceedings [Doc. 6, ¶¶ 38-39, 44].

Holmseth also saw a new entry in the Belmont Court docket with a new tracking number, clarifying that the new tracking number had always been the one associated with the notice of the hearing Holmseth failed to attend [Doc. 6, ¶ 30]. He later learned from a YouTube program that the tracking number was associated with FedEx, and FedEx's online tracking tool indicated that the package was pending and in transit [Doc. 6, ¶ 35].

## II. PROCEDURAL BACKGROUND

Based on the above facts, Holmseth, pro se, filed a Complaint and an Amended Complaint against Goddard, Bonnie Conaway (Goddard's attorney in the Belmont Court cases), Ohio Governor Mike DeWine, the State of Ohio, and the Fregiatos [Docs. 1, 6]. Holmseth contends

---

[3] This is also Holmseth's address of record with the Court [Doc. 1, ¶ I.A]. Holmseth alleges that Wisconsin mailing address "was created for [his] safety." [Doc. 6, ¶ 17].

3

that the CSPO and Goddard's threats to enforce it are part of an ongoing conspiracy between Defendants to defame Holmseth and extort him into taking down his news reports and prevent future reporting [*See* Doc. 6, ¶¶ 4, 17, 36, 42]. As relief, Holmseth requests: (i) an order requiring Belmont County and the State of Ohio to remove all references to him on government websites; (ii) an order directing the FBI to remove his name from the NCIC; (iii) $20,000,000.00 in damages; and (iv) an order barring Defendants from "any future attempts to kidnap me, defame me, stalk me, and or engage in any contact with me whatsoever which includes stalking through the use of agents" [Doc. 6, ¶ 50].

Holmseth filed a Motion for a TRO [Doc. 16], specifying no form of relief [*See generally* Doc. 16]. Holmseth instead reiterates the allegations in his Amended Complaint, adding that Goddard is using the CSPO to prevent Holmseth from reporting on Florida attorney Kim Lowry Picazio's interest in Holmseth and the murder of Christopher Edward Hallett [Doc. 16, ¶¶ 1, 25-26, 29; *see* Doc. 16, ¶¶ 2-10, 14-15, 23, 41-45]. The Fregiatos filed a Response in Opposition [Doc. 23] to the TRO motion, arguing that an injunction against court proceedings would be barred by the Anti-Injunction Act and that the TRO motion is otherwise meritless with respect to them [Doc. 23, pgs. 2-6].

The Court referred Holmseth's Motion for a TRO to the United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A)-(C) [Doc. 17], who rendered an R&R recommending that the motion be denied [Doc. 26]. To the extent Holmseth sought to enjoin state court proceedings or orders, the magistrate found that the Anti-Injunction Act and the *Rooker-Feldman* doctrine precluded the Court from doing so [Doc. 26, pgs. 7-8]. Alternatively, the magistrate judge found that Holmseth's TRO motion failed to identify a specific form of relief [Doc. 26, pg. 11]. And the magistrate judge found that Holmseth failed to establish a substantial likelihood of success on the

4

merits of his claims because: (i) the Fragiatos are absolutely immune from suit; (ii) Governor DeWine and the State of Ohio are entitled to sovereign immunity; (iii) Holmseth failed to allege how publishing his information on government websites violated his constitutional rights or how irreparable harm would result if the information were not immediately removed; (iv) Holmseth failed to allege facts to establish a claim of extortion or defamation against Goddard; (v) liability for constitutional violations does not extend to non-state actors like Goddard; (vi) Holmseth failed to sufficiently connect Goddard to @prinniedidit or prove that the Twitter posts referred to him specifically; and (vii) the evidence did not corroborate Holmseth's assertion that Picazio wanted him dead [Doc. 26, pgs. 11-14].

The magistrate judge also recommends that Holmseth be referred, pursuant to Standing Order 18-04, to the Chief District Judge for an evaluation on whether he should be designated a vexatious litigant [Doc. 26, pg. 16]. The magistrate judge made this recommendation based on five prior federal lawsuits filed by Holmseth which were dismissed [Doc. 26, pgs. 14-15]:

1. *Holmseth v. Picazio et al*, No. 0:19-cv-60002 (S.D. Fla.)—sua sponte dismissal for failure of plaintiff's counsel to comply with court orders requiring a status report and counsel to show for counsel's failure to file a status report [CM/ECF for S.D. Fla, No. 0:19-cv-60002, Docs. 28, 33, 35].

2. *Holmseth v. City of East Grand Forks et al*, No. 0:14-cv-02970 (D. Minn.)— dismissal with prejudice because Holmseth failed to allege facts which could plausibly state a claim [CM/ECF for D. Minn., No. 0:14-cv-2970, Docs. 107, 133].

3. *Holmseth v. City of Grand Forks et al*, No. 0:16-cv-02496 (D. Minn)— dismissal without prejudice because Holmseth failed to file a complaint, establish a basis for subject matter jurisdiction, or establish that venue was proper [CM/ECF for D. Minn. No. 0:16-cv-02496, Docs. 3, 4].

4. *Holmseth v. City of Grand Forks/Grand Forks Police Dep't et al*, No. 3:16-cv-00303 (D. N.D.)—sua sponte dismissal under 28 U.S.C. § 1915(e)(2) [CM/ECF for D. N.D., No. 3:16-cv-00303, Docs. 6].

5. *Holmseth v. Page et al*, No. 3:22-cv-00912 (M.D. Tenn.)—sua sponte dismissal without prejudice for failure to file a complaint which complied with Federal Rule of Civil Procedure 8 [CM/ECF for M.D. Tenn., No. 3:22-cv-00912, Doc. 16].

Holmseth filed objections in the form of a "Motion on Illegal Monopolies and Demand for Relief," listing 12 objections to the R&R [Doc. 31]. Several of his objections take issue with the R&R's discussion of the facts and pleadings [Doc. 31, ¶¶ I-VI, IX]. Substantively, Holmseth argues that the Anti-Injunction Act does not apply because the Belmont Court lacked jurisdiction [Doc. 31, ¶ XI]. He argues that, contrary to the R&R, his request for injunctive relief extends to Conaway and the Amended Complaint asserted a claim based on a photograph Goddard allegedly sent Erickson [Doc. 31, ¶¶ VIII, X]. He argues that new evidence shows that Goddard is the person using @prinniedidit on Twitter [Doc. 31, ¶ VII]. And he argues that his past cases do not constitute evidence of vexatious litigation [Doc. 31, ¶ XII]. Holmseth also filed new evidence [Docs. 27, 28, 37].

The Fregiatos filed a Response in Opposition to Holmseth's Objection [Doc. 39]. The Fregiatos argue that the Court should disregard Holmseth's new evidence [Doc. 39, pgs. 2-3]. They further argue that: Holmseth's challenge to the application of the Anti-Injunction Act is meritless; he waived any objection to the application of the *Rooker-Feldman* doctrine; and the magistrate judge correctly concluded that they are immune from suit [Doc. 39, pgs. 4-5].

Holmseth thereafter filed a Motion to Strike the R&R [Doc. 41]. Holmseth argues that the magistrate judge engaged in "judicial misconduct" through the improper characterizations of his arguments, use of the improper characterizations to deny his claims, and use of "fraud, trickery, and deception" to build a case for having him declared a vexatious litigant [Doc. 41, ¶¶ 1-11].

### III. DISCUSSION

The Court reviews de novo those portions of the R&R to which proper objections are made. Fed.R.Civ.P. 72(b)(3); *see* 28 U.S.C. § 636(b)(1). Proper objections are those which "explain[] and cite[] specific portions" of the R&R at issue. *Robert v. Tesson*, 507 F.3d 981, 994 (6th Cir. 2007) (internal quotation marks omitted). The Court may otherwise adopt uncontested findings and rulings. *Brown v. Bd. Of Educ.*, 47 F. Supp. 3d 665, 674 (W.D. Tenn. 2014) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985)). And the Court may "accept, reject, or modify, in whole or in part," the magistrate judge's findings or recommendations. 28 U.S.C. § 636(b)(1).

#### A. Motion to Strike and New Evidence

As an initial matter, Holmseth's Motion to Strike is procedurally improper. The only matters that can be stricken by the Court are "pleadings," which does not include orders of the Court or recommendations of the magistrate judge. Fed.R.Civ.P. 12(f); *see* Fed.R.Civ.P. 7(a). Holmseth's Motion to Strike [Doc. 41] is therefore **DENIED**. Holmseth's arguments asserted therein are nevertheless considered to the extent that they constitute properly asserted objections to the R&R. Additionally, although the Court has discretion to receive new evidence after issuance of the R&R, 28 U.S.C. § 636(b)(1)(C), it is unnecessary to address whether to consider the new evidence presented by Holmseth because, as will be discussed below, the Court finds that it lacks the authority to grant the injunctive relief sought. Because that issue is dispositive and independent of the potential merit of his claims, the Court does not reach the strength of those claims.

#### B. Authority to Issue a TRO

The Court finds no error in the magistrate judge's determination that the Anti-Injunction Act precludes an order enjoining Holmseth's Belmont Court proceedings. Holmseth's primary concern is the Belmont Court's enforcement of the CSPO. The Anti-Injunction Act, however, bars

7

the Court from enjoining those enforcement proceedings unless "expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgment." 28 U.S.C. § 2283. Although Holmseth argues that the second exception applies because the Belmont Court lacked jurisdiction [Doc. 31, ¶ XI], the Sixth Circuit has narrowed application of the exception only to when the case was removed from state court or the Court acquires in rem or quasi in rem jurisdiction. *Hanover Am. Ins. Co. v. Tattooed Millionaire Ent., LLC*, 38 F.4th 501, 506 (6th Cir. 2022). Neither is the case here. Holmseth's objection to the magistrate judge's finding that the Court lacks authority to enjoin the Belmont Court proceedings is **OVERRULED**.

The Court also notes that Holmseth made no objection to the magistrate judge's determination that the Court lacked jurisdiction under the *Rooker-Feldman* doctrine to set aside the CSPO [*see generally* Docs. 28, 31]. Any objection Holmseth could have raised is deemed forfeited; the magistrate judge's finding in that the Court lacks authority to set aside the CSPO is **ADOPTED**. *Brown*, 47 F. Supp. 3d at 674.

C. **Likelihood of Success on the Merits**

Because the Court lacks the authority grant Holmseth's requested injunctive relief, the Court finds it unnecessary to consider whether Holmseth has demonstrated a strong likelihood of success on the merits of his claims and/or irreparable injury absent a TRO. The R&R's alternative recommendation that Holmseth failed to otherwise establish entitlement to a TRO is **REJECTED**. And Holmseth's objections related to the magistrate judge's discussion of the merits, including the magistrate judge's description of the facts and characterization of Holmseth's arguments are **OVERULLED AS MOOT**.

8

Case 2:23-cv-00011-DCLC-CRW   Document 50   Filed 08/25/23   Page 8 of 10   PageID #: 1132

### D. Vexatious Litigant

Standing Order 18-04 directs district judges to "refer litigants with a history of repetitive, vexatious, or frivolous litigation to the chief judge to determine whether an injunction is inappropriate."

The Court finds it inappropriate, at this juncture, to refer Holmseth for vexatious litigant review. The cases cited by the magistrate judge indicate a relative short pattern of federal litigation history, only one of which was determined to be frivolous [CM/ECF for D. N.D., No. 3:16-cv-00303, Doc. 6]. The Southern District of Florida did not consider the merit of Holmseth's claims [CM/ECF for S.D. Fla, No. 0:19-cv-60002, Docs. 28, 33, 35]. Nor did the District of Minnesota in Case No. 0:16-cv-2496 [CM/ECF for D. Minn. No. 0:16-cv-02496, Docs. 3, 4]. Nor did the Middle District of Tennessee in Case No. 3:22-cv-00912 [CM/ECF for M.D. Tenn., No. 3:22-cv-00912, Doc. 16]. And only the Middle District of Tennessee case concerns facts which overlap with the instant case [*see* CM/ECF for M.D. Tenn., No. 3:22-cv-00912, Doc. 14]. Therefore, the magistrate judge's recommendation to refer Holmseth for vexatious litigant review is **REJECTED.**

That said, Holmseth's litigation history raises legitimate concerns. Holmseth is **CAUTIONED** that although the Court is not referring him for vexatious litigant review, the Court retains the authority to determine whether to enjoin him from filing "frivolous, harassing, repetitive, or vexatious motions or documents" in this particular case. Standing Order 18-04.

### IV. CONCLUSION

The magistrate judge's R&R [Doc. 26] is **ADOPTED** with respect to its finding that the Court lacks authority to grant Holmseth his requested injunctive relief and **REJECTED** in all

other respects.  Holmseth's Motion for a TRO [Doc. 16] is **DENIED**.  Holmseth's Motion to Strike [Doc. 41] is **DENIED**.

      **SO ORDERED:**

s/ Clifton L. Corker
United States District Judge
