UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| TIMOTHY CHARLES HOLMSETH, | ) | |
|---|---|---|
| | ) | |
| Plaintiff, | ) | 2:23-CV-00011-DCLC-CRW |
| | ) | |
| vs. | ) | |
| | ) | |
| ALEXANDRIA HANNELORE GODDARD, et al, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on various motions, which are ripe for review: Defendants Belmont County Court of Common Pleas Judge Frank Fregiato's and Belmont Clerk of Court Cynthia Fregiato's (collectively "the Fregiatos") Motion to Dismiss [Doc. 10] and Motion to Strike [Doc. 47]; Defendant Bonnie Conaway's pro se Motion to Dismiss [Doc. 13]; Plaintiff Timothy Charles Holmseth's Motion to Strike [Doc. 14] and Motion for Order to Deny Any Claims of Judicial or Qualified Immunity [Doc. 24]; and the Fregiatos's Motion to Strike [Doc. 47].

For the reasons discussed below: (i) both Holmseth's and the Fregiatos's motions to strike [Docs. 14 and 47] are **DENIED**; (ii) Defendants' motions to dismiss [Docs. 10 and 13] are **GRANTED IN PART** and **DENIED IN PART**; (iii) this action is **DISMISSED WITHOUT PREJUDICE** for improper venue; and (iv) all other pending motions are **DENIED AS MOOT**.

I.     **FACTUAL BACKGROUND**[1]

Holmseth is a "news reporter, investigative journalist, war correspondent, and publisher" who publishes content on www.timothycharlesholmseth.com and Truth Social [Doc. 6, ¶¶ 2, 4, 15,

---

[1] These facts are drawn from the Amended Complaint [Doc. 6].

28, 41]. He claims to reside in Minnesota, though he maintains a Wisconsin address as his address of record [Doc. 1, pg. 1; Doc. 6, ¶ 17]. Alexandria Hannelore Goddard is a "Media Activist" who resides in Martins Ferry, Ohio [Doc. 1, pg. 1; Doc. 6, pg. 5]. Conaway is an attorney who resides in Bridgeport, Ohio, and represented Goddard in proceedings which took place in the Belmont County Court of Common Pleas ("Belmont Court") [Doc. 1, pg. 2; Doc. 13, ¶¶ 1-2, 6, 9-10]. The Fregiatos reside in St. Clairsville, Ohio [Doc. 1, pgs. 2, 7]. And Ohio Governor Mike DeWine resides in Columbus, Ohio [Doc. 1, pg. 2].

In August 2022, Holmseth learned from YouTube that the State of Ohio filed in the Belmont Court a criminal charge against him for Complicity to Menacing by Stalking [Doc. 6, pgs. 3-4, ¶ 44]. Subsequent investigation identified the offense date as August 12, 2022, Randi Lynn Erickson (the "escrow agent" for Holmseth's website) as the person with whom Holmseth was allegedly complicit, and Goddard as the alleged victim [Doc. 6, pg. 4, ¶ 17]. A review of the docket further indicated that Summonses had been mailed to Erickson at an incorrect address and to Holmseth at an address at which he neither lived nor received mail for the past three years [Doc. 6, pg. 4].

In response, Holmseth sent a package to the Belmont Court with an updated address at which he could be reached [Doc. 6, pg. 6]. Holmseth also mailed an affidavit and flash drive containing text messages exchanged between Goddard and Erickson [*Id.*]. Holmseth claims that the text messages allegedly included an unsolicited photograph of female genitalia in an attempt to plant evidence of child pornography [Doc. 6, pg. 6, ¶¶ 18, 32]. They also included threats made by Goddard after Erickson refused an invitation for an interview at Goddard's home in Martins Ferry, Ohio [Doc. 6, pgs. 5-6]. And Goddard bragged that she assisted a former Federal Bureau of Investigation ("FBI") agent and others draft and prepare restraining orders against Erickson and Holmseth in the Family Court of Anoka County, Minnesota [Doc. 6, pg. 6].

2

Four days later, Holmseth heard Goddard call into a live YouTube program hosted by William K. Murtaugh in Florida [Doc. 6, pg. 6]. Goddard announced that it was Ohio (and not her) who filed the Belmont County charges [Doc. 6, pgs. 6-7]. Goddard stated that she had a "'9mm' on her table loaded with 'cop killers'" around the time she exchanged text messages with Erickson [Doc. 6, pg. 7]. Goddard denied being the person depicted in the nude photograph Erickson received [Doc. 6, pg. 7]. And Goddard asserted that she "talks to the 'Prosecutor' all the time and sends him everything published on www.timothycharlesholmseth.com about the subject." [Doc. 6, pg. 7].

On November 9, 2022, Holmseth filed a lawsuit against Goddard in the Middle District of Tennessee, No. 3:22-cv-00912, asserting a claim under the Racketeer Influenced and Corrupt Organizations Act ("RICO") [Doc. 6, ¶¶ 4, 6-7].[2] Two months later, Holmseth learned from social media that the Belmont Court issued a Civil Stalking Protection Order ("CSPO") against him for the protection of Goddard [Doc. 6, ¶ 9]. Holmseth found the corresponding court docket and read an entry stating that he failed to appear for a hearing despite proof of service by certified mail on January 21, 2023, based on the tracking information available on the U.S. Postal Service website ("USPS") [Doc. 6, ¶ 12]. However, Holmseth did not reside at the address to which the petition was mailed (808 Carmichael Rd., PMB 156, Hudson, Wisconsin) [Doc. 6, ¶ 17].[3] And USPS's online tracking tool indicated that "a label had been created using the tracking number, but said no process of delivery had even been initiated." [Doc. 6, ¶ 23].

---

[2] The Middle District of Tennessee lawsuit was dismissed without prejudice on February 7, 2023, for failure to comply with the pleading requirements of Federal Rule of Civil Procedure 8 [CM/ECF for M.D. Tenn., No. 3:22-cv-00912, Doc. 16].

[3] This is also Holmseth's address of record with the Court [Doc. 1, pg. 1]. Holmseth alleges that the Wisconsin mailing address "was created for [his] safety" [Doc. 6, ¶ 17].

3

After the CSPO issued, the State of Ohio and Belmont Court turned over information about Holmseth acquired through the CSPO proceedings to the National Crime Information Center ("NCIC") [Doc. 6, ¶ 16]. Holmseth also saw on Twitter posts by "@prinniedidit"—who Holmseth asserts is Goddard—threatening to have Holmseth arrested by the State of Ohio if anyone in his "fan club" said anything about @prinniedidit she disliked [Doc. 6, ¶ 24]. This included third-party re-tweets of Holmseth's posts on Truth Social [Doc. 6, ¶ 28]. After Holmseth filed the Original Complaint, @prinniedidit demanded Holmseth take down articles on his website regarding service on process in the Belmont Court case [Doc. 6, ¶¶ 38-39]. And after Holmseth posted on his Truth Social account a copy of the affidavit he filed in the Middle District of Tennessee case, @prinniedidit demanded that Holmseth instruct his third parties to "stop it and remove any mention of me immediately" [Doc. 6, ¶ 44].

Holmseth also saw a new entry in the Belmont Court docket with a new tracking number, clarifying that the new tracking number had always been the one associated with the notice of the hearing Holmseth failed to attend [Doc. 6, ¶ 30]. He later learned from Murtaugh's YouTube program that the tracking number was associated with FedEx, and FedEx's online tracking tool indicated that the package was pending and in transit [Doc. 6, ¶ 35]. And Goddard made an appearance on Murtaugh's program, in which she stated that she was creating a "dossier on him (Timothy Holmseth) that will be going to the Secret Service because I do believe that he is not any different than John Hinckley Jr." [Doc. 6, ¶ 37].

## II. PROCEDURAL HISTORY

Based on the above facts, Holmseth, pro se, filed a Complaint and an Amended Complaint against Goddard, Conaway, Governor DeWine, the State of Ohio, and the Fregiatos [Docs. 1, 6]. Holmseth contends that the CSPO and Goddard's threats to enforce it are part of an ongoing conspiracy between Defendants to defame Holmseth and extort him into taking down his news

4

reports and prevent future reporting [*See* Doc. 6, ¶¶ 4, 17, 36, 42]. Holmseth asserts that the 2022 criminal charge and 2023 CSPO were based on false allegations [*See* Doc. 6, ¶¶ 9 45, 47]. And Holmseth contends that the conspiracy violates 18 U.S.C. §§ 242, 1028, 1343, 2261A, and 1951, RICO, and "18 U.S.C. Code Chapter 63" [Doc. 6, pg. 24, ¶ K.]. As relief, Holmseth requests: (i) an order requiring Belmont County and the State of Ohio to remove all references to him on government websites; (ii) an order directing the FBI to remove his name from the NCIC; (iii) $20,000,000.00 in damages; and (iv) an order barring Defendants from future attempts to kidnap, defame, or stalk him or engage in any contact with him [Doc. 6, ¶ 50].

Summonses were issued to Defendants but only those issued to Conaway and the Fregiatos were returned executed [Docs. 5, 8, 9]. The Proof of Service form corresponding to Goddard's Summons stated, "Address given to serve was incorrect [sic] no longer resides" [Doc. 8].

The Fregiatos now move to dismiss this action under Federal Rules of Civil Procedure 12(b)(1), (b)(2), (b)(3), and (b)(6) [Doc. 10; Doc. 12]. In particular, the Fregiatos seek dismissal for lack of personal jurisdiction, improper venue, or failure to state a claim [Doc. 12, pgs. 7-9, 11-19]. Alternatively, the Fregiatos request transfer of the action to the Southern District of Ohio [Doc. 12, pgs. 9-11]. Conaway separately filed a pro se Motion to Dismiss, also seeking dismissal for lack of personal jurisdiction, improper venue, and failure to state a claim [Doc. 13].

Holmseth subsequently moved to strike the Fregiatos's Motion to Dismiss [Doc. 14] and filed an "Answer" to Conaway's Motion to Dismiss [Doc. 18]. The Fregiatos filed a Response in Opposition to Holmseth's Motion to Strike [Doc. 20]. Holmseth then filed a Motion for Order to Deny Any Claims of Judicial or Qualified Immunity [Doc. 24]. Construing Holmseth's motion regarding judicial and qualified immunity as a response to their motion to dismiss, the Fregiatos filed a Reply [Doc. 25], arguing, in part, that Holmseth's "Motion" was untimely under Local Rule 7.1. and should therefore be disregarded [Doc. 25, pg. 2].

5

Holmseth then filed a "Challenge to Document No. 10," quoting various Supreme Court decisions, an American Jurisprudence encyclopedia, and the United States and Ohio Constitutions [Doc. 27, pgs. 1-4] and citing several statutes and executive orders [Doc. 27, pgs. 3-4].[4] The Fregiatos responded, arguing that Holmseth's filing is untimely and otherwise fails to articulate how the authorities he cites opposes their grounds for dismissal [Doc. 34, pgs. 1-3]. Thereafter, Holmseth filed a second "Challenge to Document No. 10" that is identical to the first one except that he highlighted specific case citations and statutes [Doc. 27, pgs. 1-4].

Holmseth also filed a "Response to Document Number 34" [Doc. 42], arguing that the Fregiatos's attorney has yet to enter an appearance and that the Court "cannot ignore [his] pleadings because [his] rights are GUARANTEED by the United States Constitution" [Doc. 42, pgs. 1-2, 5]. The Fregiatos then moved to strike Holmseth's "Response" [Doc. 47], arguing that it is an improper sur-reply that was filed without leave of court [Doc. 47, pgs. 1-2].

### III. DISCUSSION

#### A. Motions to Strike

Holmseth's Motion to Strike is not well-taken. Holmseth seeks to strike the Fregiatos's Motion to Dismiss under Federal Rule of Civil Procedure 12(f), arguing that the motion violated Federal Rule of Civil Procedure "9.2" because their attorney of record did not file a notice of appearance prior to filing the motion [Doc. 14, pgs. 1-2]. But Rule 12(f) only authorizes the Court to strike matters contained in a "pleading." Fed.R.Civ.P. 12(f). Motions are not "pleadings" subject to Rule 12(f). Fed.R.Civ.P. 7(a); *see Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 375 (6th Cir. 2006). Moreover, the Federal Rules of Civil Procedure do not require counsel to

---

[4] Holmseth also attached 153 pages of "New Evidence" to supplement his Motion for a Temporary Restraining Order [Doc. 27, pgs. 5-6; Doc. 27-1; Doc. 27-2]. Because Holmseth is explicit that the additional materials pertain to the Motion for a Temporary Restraining Order, they are not considered in connection with the motions to dismiss.

6

enter a formal appearance. *See* Fed.R.Civ.P. 11(a). Nor do the Court's Local Rules. *See* E.D. Tenn. L.R. 83.4(a) ("Counsel may file a formal notice of appearance, but it shall not be necessary to do so."); *see also Summer v. Cunningham*, No. 3:10-CV-169, 2011 WL 52554, *10 (E.D. Tenn. Jan. 7, 2011). Holmseth's Motion [Doc. 14] is therefore **DENIED**.

As for the Fregiatos, they do not cite Rule 12(f), so the Court assumes their Motion attempts to invoke the Court's inherent power to strike non-pleadings which violate the Local Rules. *See American C.L. Union of Ky. v. McCreary Cnty.*, 607 F.3d 439, 451 (6th Cir. 2010). The Court declines to exercise its inherent powers. *See Chambers v. NASCO, Inc.*, 501 U.S. 32, 45 (1991) (counseling restraint in the exercise of inherent powers). Holmseth's "Response to Document Number 34" addresses both the lack of an attorney appearance [Doc. 42, ¶¶ 2-9, 19-21] and the merits of the Fregiatos's Motion to Dismiss and subsequent briefing [*Id.*, ¶¶ 10-17, 22-33]. The former issue is moot because the Court is denying Holmseth's Motion to Strike. And even considering Holmseth's post-reply briefing, his action, as will be discussed below, is due to be dismissed for improper venue. The Fregiatos's Motion to Strike [Doc. 47] is therefore **DENIED**.

### B.     Motions to Dismiss

Prior to filing an answer, a defendant may file a motion to dismiss. Fed.R.Civ.P. 12(b). The possible grounds for dismissal include lack of subject matter jurisdiction, lack of personal jurisdiction, improper venue, and failure to state a claim. Fed.R.Civ.P. 12(b)(1)-(3), (b)(6). Here, Defendants seek dismissal based on each of the foregoing grounds. The Fregiatos argue the Court lacks personal jurisdiction over them because they do not reside in Tennessee and none of the allegations in the Amended Complaint sufficiently connects them to Tennessee [Doc. 12, pgs. 7-8]. Alternatively, the Fregiatos argue that venue is improper because no Defendant resides in the Eastern District of Tennessee, none of the events giving rise to Holmseth's claims occurred in the Eastern District of Tennessee, and venue would be proper in the Southern District of Ohio [Doc.

7

12, pgs. 8-9]. Otherwise, they request transfer to the Southern District of Ohio [Doc. 12, pgs. 9-11]. As a third alternative, the Fregiatos argue that: (i) the *Rooker-Feldman* doctrine precludes Fregiato's claims against them; (ii) Judge Fregiato is entitled to judicial immunity; (iii) Clerk Fregiato is entitled to quasi-judicial immunity; (iv) Holmseth lacks standing to initiate federal criminal prosecution; and (v) Holmseth failed to allege facts which could be construed as asserting a viable claim under 42 U.S.C. § 1983 [Doc. 12, pgs. 11-19]. Conway asserts similar grounds for dismissal [Doc. 13].

Holmseth responds that personal jurisdiction exists and that venue is proper because Conaway pursued and obtained a CSPO against Holmseth in response to his lawsuit against Goddard in the Middle District of Tennessee [Doc. 18, ¶¶ 5, 10, 20-21]. Holmseth also argues that Conaway is actively conspiring with Goddard to defame him, stating that Goddard made defamatory statements about Holmseth and Erickson on the internet [Doc. 18, ¶¶ 10-14]. Holmseth argues that Conaway also has contacts with Tennessee by virtue of Goddard's appearances on a YouTube program produced in Dover, Tennessee, which broadcasted screenshots of the Belmont Court docket [Doc. 18, ¶¶ 17-19].

Generally, personal jurisdiction is addressed before either venue or the merits.[5] *Leroy v. Great W. United Corp.*, 443 U.S. 173, 180 (1979); *Innovation Ventures, LLC v. Custom Nutrition, LLC*, 912 F.3d 316, 332 (6th Cir. 2018). But "when there is a sound prudential justification for doing so," the Court may address venue first. *Leroy*, 443 U.S. at 180. And the Court may dismiss for improper venue without considering the other grounds upon which dismissal is sought. *Jones v. Ohio Nat'l Life Ins. Co.*, No. 1:20-CV-00356, 2020 WL 4816233, at *2 (N.D. Ohio Aug. 19,

---

[5] Because the Fregiatos challenge only subject-matter jurisdiction over Holmseth's claim for injunctive relief with respect to the CSPO and not subject matter jurisdiction over the action, the Court does not start its analysis with subject matter jurisdiction.

8

2020) (collecting cases). Because Holmseth has failed to show that venue is proper in this district, the Court will address only that ground for dismissal.

When contested, the plaintiff carries the burden of proving that venue is proper. *See, e.g., Smith v. Swaffer*, 566 F. Supp. 3d 791, 802 (N.D. Ohio 2021); *Ingram Barge Co., LLC v. Bunge N. Am., Inc.*, 455 F. Supp. 3d 558, 569 (M.D. Tenn. 2020); *Equal Emp. Opportunity Comm'n v. FPM Grp., Ltd.*, 657 F. Supp. 2d 957, 963 (E.D. Tenn. 2009); *see also* 14D Charles Alan Wright & Arthur Miller, Federal Practice and Procedure § 3826 (4th ed. updated Apr. 2023). The Court may consider all well-pleaded allegations which bear on venue and facts outside the Complaint, drawing all reasonable inferences in favor of the plaintiff. *Id.*

Venue is proper in:

(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

(3) if there is no district in which an action may otherwise be brought . . . , any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). Defendants who are natural persons reside in the judicial district in which they are domiciled. 28 U.S.C. § 1391(c)(1). Public officials reside in the county where they serve. *O'Neill v. Battisti*, 472 F.2d 789, 791 (6th Cir. 1972). And a state resides in every district within its borders. *See California v. Azar*, 911 F.3d 558, 570 (9th Cir. 2018). If venue is improper, the Court must dismiss the case or, "if it be in the interest of justice," transfer the case to the district or division where venue would be proper. 28 U.S.C. § 1406(a).

Holmseth has failed to establish that venue is proper in the Eastern District of Tennessee. First, venue is not proper under § 1391(b)(1) because none of Defendants resides in the Eastern

9

District of Tennessee. Conaway, Goddard, and the Fregiatos all reside in Belmont County, Ohio, which is in the Southern District of Ohio [Doc. 1, pgs. 1-2, 7; Doc. 6, pg. 5; Doc. 13-2, ¶ 1; *see* 28 U.S.C. § 1391(c)(1); About the Court, S.D. Ohio, https://www.ohsd.uscourts.gov/about-court (last visited Aug. 25, 2023)].[6] Governor DeWine resides for purposes of venue in Franklin County, Ohio, which is also in the Southern District of Ohio [Doc. 1, pg. 2; *see O'Neill*, 472 F.2d at 791]. The State of Ohio resides in both the Northern and Southern District of Ohio. *Azar*, 911 F.3d at 570. Thus, venue is not proper under § 1391(b)(1).

Venue is also improper under § 1391(b)(2). Holmseth's claims all stem from Goddard's alleged use of the Belmont Court to obtain a CSPO, which occurred in the Southern District of Ohio. And none of the facts regarding the consequences of the CSPO being issued occurred in the Eastern District of Tennessee: (i) the CSPO was allegedly in retaliation for Holmseth's lawsuit in the Middle District of Tennessee [Doc. 6, ¶ 4]; (ii) the YouTube programs Holmseth contends Goddard made appearances on were produced in Dover (in the Middle District of Tennessee) [Doc. 6, pg. 5; Divisions of Court, E.D. Tenn, https://www.tnmd.uscourts.gov/divisions-court (last visited Aug. 25, 2023)] and Apopka, Florida (in the Middle District of Florida) [Doc. 6, ¶ 31; Middle District of Florida Counties and Borders, M.D. Fla., https://www.flmp.uscourts.gov/middle-district-florida-counties-and-borders (last visited Aug. 25, 2023)]; and (iii) Goddard's threats of enforcing the CSPO against Holmseth would be directed to someone who resides either in Minnesota [Doc. 6, ¶ 17] or Wisconsin [Doc. 1, pg. 1]. Nor would the fact that the Belmont Court proceedings or NCIC information is publicly accessible on the

---

[6] Although the Summons sent to Goddard was returned unexecuted because she no longer resided at the Belmont County address provided by Holmseth, no information has been submitted indicating that Goddard established domicile in another state [Doc. 8]. Holmseth has stated in various filings that Goddard relocated to West Virginia, but he has not substantiated that statement with any facts which could lead the court to draw the inference that Holmseth established domicile in West Virginia [*See* Doc. 16, ¶¶ 21, 48; Doc. 22, ¶ 15].

10

internet make venue proper in the Eastern District of Tennessee. *See MedQuist MRC, Inc. v. Dayani*, 191 F.R.D. 125, 127-28 (N.D. Ohio 1999). Put simply, nothing about Holmseth's lawsuit arises out of events which occurred in the Eastern District of Tennessee. Last, venue is improper under § 1391(b)(3) because venue would have been proper in the Southern District of Ohio, where all Defendants reside.

Because venue in the Eastern District of Tennessee is improper, Holmseth's case must be dismissed without prejudice subject to him re-filing in the Southern District of Ohio. 28 U.S.C. § 1406(a). Accordingly, the Court declines to consider Conaway's and the Fregiatos's alternative grounds for dismissal. And because Holmseth does not request a transfer of venue and it is not obvious that the interests of justice would warrant transfer, the Court does not consider whether transfer of venue is warranted.

### IV. CONCLUSION

For the reasons discussed above: (i) Holmseth's Motion to Strike [Doc. 14] is **DENIED**; (ii) the Fregiatos's Motion to Strike [Doc. 47] is **DENIED**; (iii) the Fregiatos's Motion to Dismiss [Doc. 10] and Conaway's Motion to Dismiss [Doc. 13] are **GRANTED IN PART** and **DENIED IN PART**; (iv) this case is **DISMISSED WITHOUT PREJUDICE**; and (v) all other pending motions [Docs. 24, 45, and 49] are **DENIED AS MOOT**.

SO ORDERED:

s/ Clifton L. Corker
United States District Judge